IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MYO, LLC, <br> d/b/a MYO MASSAGE, <br><br> Plaintiff, <br><br> v. <br><br> BRULL & YORK, LLC, <br> d/b/a MYOLOGIC MASSAGE, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | 1:18-CV-370-RP |

## ORDER

Before the Court is a Motion for a Preliminary Injunction filed on November 7, 2018, by Plaintiff Myo, LLC d/b/a/ Myo Massage ("Plaintiff" or "Myo"). (Dkt. 18). Plaintiff seeks a preliminary injunction prohibiting Defendant Myologic Massage ("Defendant" or "Myologic") from publishing, distributing, or publicly posting Plaintiff's registered mark. (*Id.*). After considering the parties' submissions, the supporting evidence, and the relevant law, the Court finds that the motion should be denied.

## I. BACKGROUND

Plaintiff is a health services spa in Austin, Texas, which was founded in 2006. (Compl., Dkt. Dkt. 1, ¶ 1; Mot., Dkt. 18, at 2). Plaintiff has used the name "Myo Massage" since at least as early as May 2006. (*Id.* ¶ 12). Plaintiff has held a trademark registration for "Myo Massage" ("the Mark") since August 23, 2016. (Federal Trademark Registration, Dkt. 18-9, at 2).[1] Defendant has been

---

[1] The PTO initially rejected Plaintiff's mark because it "merely describe[d] a feature of [Plaintiff's] goods." (Mot., Dkt. 18, at 4; Prosecution History, Dkt. 18-10, at 21). The next year, the PTO approved the trademark under § 2(f) of the Lanham Act, finding that the "Myo Massage" mark "ha[d] become distinctive of the goods and/or services through the applicant's substantially exclusive and continuous use of the mark" for a period of more than five years. (Prosecution History, Dkt. 18-10, at 11).

operating a health services spa in Austin under the name "Myologic Massage" since January 2018. (Compl., Dkt. 1, ¶ 2).

Plaintiff became aware of Defendant on March 1, 2018, when a co-owner attempted to log into the Myo Massage account on the health business management website MindBody.com. (Collett Decl., Dkt. 18-1, ¶ 2; MindBody Search Results, Dkt. 18-3). Plaintiff sent a cease and desist letter to Defendant on March 19, 2018 advising them of the Mark. (March Cease and Desist, Dkt. 18-11). Defendant responded that "no trademark infringement is present because there is not a likelihood of confusion between the two marks," and declined to cease using the name "Myologic Massage." (Cease and Desist Response, Dkt. 18-12). Plaintiff sent a second cease and desist letter on April 5, 2018. (April Cease and Desist, Dkt. 18-13).

Plaintiff filed this action on May 2, 2018, seeking damages and injunctive relief action for trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq. ("Lanham Act") and for trademark infringement and unfair competition under Texas common law. (Compl., Dkt. 1, ¶ 1).

On November 7, 2018, Plaintiff filed the instant motion seeking a preliminary injunction to enjoin Defendants from:

a) using in any manner the Myo Massage trademark, and any other term or terms likely to cause confusion therewith, including Myologic Massage;

b) using the domain name "myologicmassage.com";

c) using the Myo Massage trademark in any manner in connection with Defendant's goods or services in a manner that is likely to create the erroneous belief that said goods or services are authorized by, sponsored by, licensed by or are in some way associated with Myo, LLC or Myo Massage;

d) using the Myo Massage trademark on any social media websites, business review or ranking website pages, any other website pages, advertising, Internet code words or titles, or any other promotional materials whose appearance so resembles the trademark used by Myo, LLC or Myo Massage, so as to create a likelihood of confusion, mistake or deception; and

2

e) any other acts or conduct that would cause consumers to erroneously believe that Defendant's goods or services are somehow sponsored by, authorized by, licensed by, or in any other way associated with Myo, LLC or Myo Massage.

(Proposed Order, Dkt. 18-19, ¶ 2). Plaintiff also asks the Court to order Defendants to take corrective action to recall, replace, or correct any marketing or advertising materials that have already been distributed with the Myo Massage trademark, (*id.* ¶ 3), to preserve all evidence relating to their use of the mark, (*id.* ¶ 4), and to deliver back-up copies to Plaintiff's counsel, (*id.*). Finally, Plaintiff asks the Court to set bond in an amount at the Court's discretion. (*Id.* ¶ 8). Defendant filed a response, (Dkt. 22), and Plaintiff filed a reply, (Dkt. 24). Neither party requested a hearing on this motion.[2]

## II. LEGAL STANDARD

A court may issue a preliminary injunction under Rule 65. Fed. R. Civ. P. 65(a)(1). The party seeking a preliminary injunction must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (quoting

---

[2] A hearing is not required in order for the Court to rule on this motion. A district court may issue a preliminary injunction without a hearing if (1) there is no factual dispute, (2) the parties have "ample opportunity to present their respective views of the legal issues involved" through briefing, and (3) the parties received sufficient notice. *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 683 (N.D. Tex. 2015) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996)); *see also Commerce Park at DFW Freeport v. Mardian Construction Co.*, 729 F.2d 334, 341 (5th Cir. 1984)). However, "where factual disputes are presented, the parties must be given a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted." *Kaepa*, 76 F.3d at 628 (citing *Commerce Park*, 729 F.2d at 342). Here, the only disputed fact—whether Defendant intentionally adopted its name in order to benefit from Plaintiff's market reputation, (Mot., Dkt. 18, at 25–27; Resp., Dkt. 22, at 13–14)—is not dispositive of this Court's grant or denial of an injunction.

3

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). To grant an injunction, the Court need only consider whether Plaintiff has shown a likelihood of success on the merits for one of its claims. *City of Dallas v. Delta Airlines, Inc.*, 2016 WL 98604, at *7 (N.D. Tex. 2016), *aff'd in part, vac'd in part*, 847 F.3d 279 (5th Cir. 2017).

## III. DISCUSSION

Having reviewed Plaintiff's motion, the Court concludes that Plaintiff has not clearly carried the burden of persuasion to show a sufficient likelihood of success on the merits.

### A. Likelihood of Success on the Merits

At this stage, Plaintiff has not established a likelihood of success on the merits. The Lanham Act makes liable "[a]ny person who . . . uses in commerce any word, term, name, symbol, or device" that "is likely to cause confusion, or to cause mistake . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). *See also Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008). A plaintiff asserting trademark infringement under the Lanham Act must show ownership of a "legally protectable mark" and that a defendant's use of that mark "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).[3]

#### 1. Ownership of Mark

"To be legally protectable, a mark must be distinctive in one of two ways: (1) inherent distinctiveness or (2) acquired distinctiveness through secondary meaning." *Streamline*, 851 F.3d at 451 (cleaned up) (citing *Nola Spice*, 783 F.3d at 537; *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)).

---

[3] The same test applies to both of Plaintiff's causes of action. "The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." *Streamline*, 851 F.3d at 450 (citing *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)).

4

Under the first prong, registration of a mark with the PTO is "prima facie evidence that the mark is inherently distinctive." *Id.* (cleaned up). Plaintiff has held a trademark registration from the United States Patent and Trademark Office ("PTO") for the name "Myo Massage" since August 23, 2016. (Trademark Registration, Dkt. 18-9, at 2). However, a defendant may rebut this evidence by showing that the mark is "not inherently distinctive." *Id.* Defendant does not directly address the "inherent distinctiveness" test, and primarily focuses its challenge to the motion on the second element for trademark infringement: likelihood of confusion between the two marks. Accordingly, for the purpose of resolving this motion, the Court assumes without deciding that Plaintiff holds a legally protectable mark.

*2. Likelihood of Confusion*

In the Fifth Circuit, the likelihood of confusion is assessed by eight factors known as the "digits of confusion." *Streamline*, 851 F.3d at 453. They are:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[,] . . . [and] (8) the degree of care exercised by potential purchasers.

*Id.* (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel*, 550 F.3d 465, 478 (2008) ("*Smack Apparel*")). "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Id.* "Likelihood of confusion is a question of fact." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 328 (5th Cir. 2008). "Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) (citing *Blue Bell Bio–Med. v. Cin–Bad, Inc.*, 864 F.2d 1253, 1260 (5th Cir. 1989)). The Court considers each of the eight digits in turn.

5

###### i. *Type of Mark*

"Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark." *Smack Apparel*, 550 F.3d at 479 (citations omitted). The strength of a trademark is determined by two factors: (1) the conceptual strength of the mark "spectrum," from "generic and descriptive" on one end to "arbitrary and fanciful" on the other; and (2) "the standing of the mark in the marketplace." *Am. Rice*, 518 F.3d at 330 (citing *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984) (quotation marks omitted)).

Plaintiff contends that "Myo Massage" is a strong mark because it has acquired distinctiveness through secondary meaning. (Mot., Dkt. 18, at 10–12, 19). In other words, Plaintiff contends that when customers think of "Myo Massage," they think of Plaintiff as a specific massage provider, not just massage services in general. *See Am. Rice*, 518 F.3d at 331 (quoting *Test Masters Educ. Svcs., Inc. v. Singh*, 428 F.3d 559, 566 (5th Cir. 2005) (secondary meaning occurs where the public thinks of "the source of the product rather than the product itself")). As evidence of this, Plaintiff points to their five-star rating on Trip Advisor, where they are ranked "#3 of 73" Spas and Wellness facilities in Austin, Texas. (TripAdvisor Rating, Dkt. 18-14). On Yelp, Plaintiff has a 4.5 star rating based on 233 reviews. (Yelp Page, Dkt. 18-16). Plaintiff also emphasizes that it has used the name "Myo Massage" in Austin for over ten years. (Mot., Dkt. 18, at 19).

However, "extensive third-party use can weaken a mark and negate a likelihood of confusion," especially where "a significant number" are "within the same category" of services. *Smack Apparel*, 550 F.3d at 479 (citing *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 316 (5th Cir. 1981) (internal quotations omitted)). In *Sun Banks*, the Fifth Circuit considered the likelihood of confusion between two financial service providers: "Sun Banks of Florida, Inc." and "Sun Federal Savings and Loan Association." *Sun Banks,* 651 F.2d at 311. Both parties submitted evidence that they chose the word "Sun" for their names "because it personified Florida and

conveyed the universal appeal of warmth and friendliness." *Id.* at 317. The Fifth Circuit found that the main part of the mark—"Sun"—was so widely used that the addition of "Banks of Florida" or "Federal Savings and Loan Association" prevented confusion. *Id.* at 316 ("We find the extensive third-party use of the word 'Sun' impressive evidence that there would be no likelihood of confusion between Sun Banks and Sun Federal."). Similarly, "[w]here a trademark is itself weak, minor additions may effectively negate any confusing similarity." *Id.* (quoting 3 Callmann, LAW OF TRADEMARKS § 82.1(i), at 722).

The same reasoning applies here. The Court finds that Plaintiff's mark is weak, for at least two reasons. First, the mark is highly descriptive. The word "myology" means the "scientific study of muscles." WEBSTER'S DICTIONARY 1495 (3d ed. 2002). Any massage service provider could innocently select this word or its derivatives as a base for their company name. "Myo Massage" is a literal characterization of the service provided. Given this purely descriptive root word, the conceptual strength of Plaintiff's mark is weak—far more "generic and descriptive" than "arbitrary and fanciful." *See Am. Rice*, 518 F.3d at 330 (citing *Falcon Rice Mill*, 725 F.2d at 346). The name "Myo" for a massage service provider is minimally arbitrary, fanciful, or imaginative.

Second, Plaintiff does not hold exclusive use of the term "myo" or "myology." Plaintiff's trademark protects only the name "Myo Massage." (Trademark Registration, Dkt. 18-9, at 2).[4] Defendant has identified at least five other trademark registrations for massage therapy service providers that use the root word "myo,"[5] and fifty total registrations that use the root word "myo" in other industries. (Trademark Search Results, Dkt. 22-7). Plaintiff's registration notes that "No

---

[4] Plaintiff's registration for "Myo Massage" states: "The Mark consists of standard characters without claim to any particular font style, size, or color."

[5] *See* Myoprobe Therapy (Registration No. 3,548,631) (Exhibit A, Dkt. 22-2), Myorenew (Registration No. 5,305,858) (Exhibit B, Dkt. 22-3), Myodetox (Registration No. 5,103,793) (Exhibit C, Dkt. 22-4), Myodetox (Registration No. 5,159,243) (Exhibit D, Dkt. 22-5), Myomassethics (Registration No. 2,721,924) (Exhibit E, Dkt. 22-6).

claim is made to the exclusive right to use the following apart from the mark as shown: 'MASSAGE.'" (Trademark Registration, Dkt. 18-9, at 2).

While Plaintiff's high ratings indicate good "standing in the marketplace," the Court concludes that the conceptual strength of the mark "Myo Massage" is weak. *Am. Rice*, 518 F.3d at 330 (citing *Falcon Rice Mill*, 725 F.2d at 346). Because the mark "Myo Massage" is weak, Defendant's use of the name "Myologic Massage" is sufficiently different to negate any confusing similarity. *See Sun Banks,* 651 F.2d at 316. Given the mark's highly "generic and descriptive" character, the Court is strongly disinclined to enjoin any party from using a similar but nonetheless different name without more evidence of confusion. This digit weighs strongly in Defendant's favor and against granting an injunction.

### ii. Similarity of the Two Marks

"Assessing the similarity of the competing marks 'requires consideration of the marks' appearance, sound, and meaning.'" *Streamline*, 851 F.3d at 454 (quoting *Smack Apparel*, 550 F.3d at 479). "Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Id.* (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 228 (5th Cir. 2009)). Plaintiff asserts that the public may think "that Myologic Massage has joined the Myo Massage group of business locations, all consistently branded with that mark, or that Myo Massage gave Defendant permission to use its mark." (Mot., Dkt. 18, at 17).

Under the circumstances of use, and the marks' appearance, sound, and meaning, the Court finds this unlikely. The marks do share a common root word and meaning. However, many health service spas share similar names drawn from a common industry vocabulary, such as "relax," "therapeutic," or "beauty." Additionally, the two marks differ in sound and cadence. The parties also use entirely different logos, font, and coloring in their branding. (Mot., Dkt. 18, at 21–23). For

8

example, Plaintiff's Facebook page features a dark brown and light blue "O" icon, with graphic lettering along the border of the image. (Myo Facebook Profile, Dkt. 18-7). Defendant's Facebook profile is a black and white repeating geometric "M," with no printed words. (Myologic Facebook Profile, Dkt. 18-18).[6] *See Streamline Pro. Sys.*, 851 F.3d at 454 (comparing "design elements" such as "color schemes"); *Smack Apparel*, 550 F.3d at 480 (same). The parties' respective marks thus differ substantially in their presentation to the public. Even if a potential customer searched for massage services in Austin, Texas, they would likely see both options listed with different contact information and branding—which is exactly what happened when Plaintiff discovered Defendant's listing on MindBody.com. (Collett Decl., Dkt. 18-1, ¶ 2; MindBody Search Results, Dkt. 18-3).

The Court finds that "under the circumstances of use," where the two marks sound similar but not identical, the marks have entirely different appearances in their branding, the meaning of the mark describes a generic service, and the public is accustomed to health spas with similar names, a reasonable person would not believe that two products have a "common origin or association." *Streamline*, 851 F.3d at 454 (quoting *Xtreme Lashes*, 576 F.3d at 228 (5th Cir. 2009)). This digit weighs in favor of Defendant.

    *iii. The Third, Fourth, and Fifth Digits: Similarity of the Products or Services; Identity of Retail Outlets and Purchasers; and Advertising Media Used*

The third, fourth, and fifth digits weigh in favor of finding confusion. Both parties operate health service spas that provide "therapeutic massage, pain management, relaxation massage, and other services" in Austin, Texas. (Compl., Dkt. 1, ¶ 1–2). The evidence indicates that the parties target the same customers. (*See* Mot. Dkt. 18, at 21–25). Defendant emphasizes that Myologic Massage specializes in and primarily advertises services for pain management, but otherwise does not dispute the other similarities in services, customers, and advertising. (Resp., Dkt. 22, at 11–13).

---

[6] In some branding images, Defendant's "M" icon looks appears black, white, and green. (*See* MindBody Search Results, Dkt. 18-3). This is no more similar to Plaintiff's branding.

The parties advertise through many of the same websites, including Google, Facebook, Yelp, and MindBody. (*Id.* at 22–25). All three of these factors increase the likelihood of confusion.

### iv. The Defendant's Intent

"Although not necessary to a finding of likelihood of confusion, a defendant's intent to confuse may alone be sufficient to justify an inference that there is a likelihood of confusion." *Streamline*, 851 F.3d at 455 (quoting *Smack Apparel*, 550 F.3d at 481). "Our intent inquiry focuses on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Id.* (cleaned up).

In this case, Defendant's intent weighs against granting an injunction. Plaintiff repeatedly asserts that Defendant intentionally copied their mark. (*See* Mot., Dkt. 18, at 25–27). But there is no evidence in the record to support that claim. As noted above, given the dictionary definition and etymology of the word, any massage service provider could innocently select the term "myology" or its derivatives as a component of their company name. *See supra*, at Section A(2)(i). From the record available, the Court lacks evidence to find that Defendant intentionally copied Plaintiff's mark. From the record, the Court finds it most likely that both Plaintiff and Defendant independently and innocently chose derivatives of the word "myology" because their businesses offer services related to muscles. This digit weighs in favor of Defendant.

### v. Evidence of Actual Confusion

"Evidence that consumers have been actually confused in identifying the defendant's use of a mark as that of the plaintiff may be the best evidence of a likelihood of confusion." *Streamline*, 851 F.3d at 457 (quoting *Smack Apparel*, 550 F.3d at 483). "A plaintiff may show actual confusion using anecdotal instances of consumer confusion, systematic consumer surveys, or both." *Id.* (citing *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004)). The Fifth Circuit has "set a low bar" for this factor, and even "a single known incident of actual confusion by a consumer has been

found to be sufficient evidence to support the district court's finding of actual confusion." *Id.* (citing *La. World Exposition v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984)). However, "evidence of actual confusion must show 'more than a fleeting mix-up of names'; rather it must show that 'the confusion was caused by the trademarks employed and it swayed consumer purchases.'" *Id.* (quoting *Xtreme Lashes*, 576 F.3d at 229) (cleaned up).

Plaintiff offers one piece of evidence of actual confusion. A customer's Google review uses both "Myologic" and "Myo" in his review of Defendant. (Google Review, Dkt. 18-15). The customer writes: "Myologic has been a blessing for me. . . . Laura and Myo have been incredible . . ." (*Id.*). Defendant responds that this is not evidence of confusion, as the customer left a review of Myologic Massage on the Google review page of that business. "There is no evidence that the customer was confused as [he] left the review right where it was intended to be left," with the company where he had the massage. (*Id.*). The Court agrees that this incident does not persuasively establish an instance of actual confusion. "Actual confusion" means that consumers have been "actually confused in identifying the defendant's use of a mark as that of the plaintiff." *Streamline*, 851 F.3d at 457 (quoting *Smack Apparel*, 550 F.3d at 483). But the customer who submitted the Google review did not identify Defendant's name as that of Plaintiff's—his review indicates that he received a massage at Myologic Massage and then left a review on Myologic's page.

On the record before the Court, there has not even been a "fleeting mix-up of names," much less actual confusion that "swayed customer purchases." *Streamline*, 851 F.3d at 457 (quoting *Xtreme Lashes*, 576 F.3d at 229) (cleaned up). The customer did not confuse the two parties for each other, or leave a review on the wrong page, or book an appointment with the wrong party. Defendant has received no misdirected phone calls, voicemails, email, or print mail from customers intending to contact Plaintiff. (Brull Decl., Dkt. 22-1, ¶ 9).[7] No customer has arrived for an

---

[7] Plaintiff does not dispute this evidence in their briefing. (*See* Mot., Dkt. 18; Reply, Dkt. 24).

11

appointment "thinking that they secured it with Plaintiff." (*Id.*). Because there is no evidence of actual confusion, this digit weighs in Defendant's favor.

> vi. *Degree of care exercised by potential purchasers*

"Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Id.* at 458 (quoting *Smack Apparel*, 550 F.3d at 483). "However, a high price tag alone does not negate other [digits of confusion], especially if the goods or marks are similar." *Id.* (quoting *Xtreme Lashes*, 576 F.3d at 231).

This final digit has already been addressed in part. As noted above, many health service spas share similar names and offer substantially similar services. *See supra*, at Section A(2)(ii). Massage at a health service spa is moderately expensive. For example, Defendant's massage services range from $55.00 to $300.00. (Resp., Dkt. 22, at 15). Plaintiff does not submit evidence of their typical pricing, but the Court assumes for the purpose of this motion that it is comparable to Defendant's. Defendant contends that "a person who is seeking massage therapy would use a higher degree of care when selecting the service provider," making confusion less likely. The Court agrees that a customer seeking a service in this price range is likely to exercise greater care in selecting a provider, particularly in an industry where many providers use similar names. In any case, Plaintiff has failed to establish through pricing or other relevant evidence that this digit weighs in their favor.

> vii. *Weighing the Digits of Confusion*

In summary, although the parties offer similar services in a common market under similar names, the Court finds that the "Myo Massage" mark is weak, generic, and descriptive. Under the circumstances of use, because the marks have entirely different appearances in their branding, the meaning of the mark describes a generic service, and the public is accustomed to health spas with similar names, the Court finds that a reasonable person would not believe that two products have a common origin or association. The Court finds no evidence in the record that Defendant

intentionally copied Plaintiff's mark. Significantly, Plaintiff has not established any evidence of actual confusion that has swayed customer choices. Finally, the Court finds that customer seeking a service in this price range is likely to exercise greater care in selecting a provider.

Weighing the eight digits of confusion together, the Court finds that this evidence is not sufficient to demonstrate a likelihood of confusion between the two companies. Without showing a likelihood of confusion, Plaintiff cannot establish likelihood of success on the merits in order to justify the "extraordinary remedy" of a preliminary injunction. *PCI Transp.*, 418 F.3d at 545 (quoting *Miss. Power & Light Co.*, 760 F.2d at 621) ("[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements.").

Having found that Plaintiff has not clearly carried its burden for at least one of the four requirements, the Court will deny the motion for a preliminary injunction.[8]

---

[8] The Court would also deny the motion because Plaintiff has failed to demonstrate a risk of irreparable harm. Although likelihood of confusion in a trademark action is generally sufficient to establish risk of irreparable harm, Plaintiff had not met that burden here. *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) ("All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed.").

   Plaintiff also argues that Defendant's continued operations as "Myologic Massage" risks irreparable damage to Plaintiff's currently strong reputation and the goodwill of its customers. (Mot., Dkt. 18, at 28). Although this is hypothetically possible, Plaintiff has introduced no evidence to indicate that Defendant's operations have had any impact on Plaintiff's reputation.

   The Court also notes that Plaintiff did not seek injunctive relief until six months after filing the complaint in this action. Plaintiff filed the complaint on May 2, 2018, and the motion for a preliminary injunction on November 7, 2018. (*See Compl.*, Dkt. 1; Mot., Dkt. 11). This delay dramatically undermines a claim that Plaintiff is at risk of irreparable harm absent injunctive relief. "Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 698 (N.D. Tex. 2015) (quoting *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F.Supp.2d 603, 609 (N.D. Tex. 2006) (finding no irreparable injury where plaintiff waited six months between discovering the facts giving rise to an infringement claim and seeking an injunction)).

## V. CONCLUSION

For the reasons given above, it is **ORDERED** that Plaintiff's Motion for a Preliminary Injunction, (Dkt. 18), is **DENIED**.

**SIGNED** on January 8, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE